```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————
ADEJUMOKE OGUNLEYE, ET AL.,
                Plaintiffs,           23-cv-9524 (JGK)

       - against -                    MEMORANDUM OPINION
                                      AND ORDER
DAVID C. BANKS, ET AL.,
                Defendants.
————————————————————————————————
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Adejumoke Ogunleye ("Ogunleye"), brings this action individually and as parent and natural guardian of D.O., against the defendants, the New York City Department of Education and David C. Banks in his official capacity as Chancellor of the Department (collectively, the "DOE"). The plaintiff appeals the decision of the State Review Officer ("SRO") denying the plaintiff's claim for direct payment of D.O.'s tuition and related services to iBrain, a private school at which the plaintiff unilaterally placed D.O. for the 2022-2023 school year. The SRO's decision reversed the decision of the Impartial Hearing Officer ("IHO"), that granted direct payment to iBrain. The parties have cross-moved for summary judgment. For the following reasons, the plaintiff's motion for summary judgment is **denied** and the defendants' motion for summary judgment is **granted.**

I.

Congress enacted the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., "to promote the education of students with disabilities." A.M. ex rel. Y.N. v. N.Y.C. Dep't of Educ., 964 F. Supp. 2d 270, 274 (S.D.N.Y. 2013).[1] "Under the IDEA, states receiving federal funds are required to provide all children with disabilities a free appropriate public education." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting 20 U.S.C. § 1412(a)(1)(A)); see also Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998). A free appropriate public education ("FAPE") must provide "special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." Walczak, 142 F.3d at 122. Because the IDEA expresses a "strong preference for children with disabilities to be educated, to the maximum extent appropriate, together with their non-disabled peers, special

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

education and related services must be provided in the least restrictive setting consistent with a child's needs." Id.

To achieve these ends, the IDEA requires state or local education agencies to provide each disabled student with an individualized education program ("IEP") specifying the student's educational needs and "the specially designed instruction and related services to be employed to meet those needs." Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 448 (2d Cir. 2015). In New York, the responsibility for developing an appropriate IEP for a child is assigned to a local Committee on Special Education ("CSE"). Walczak, 142 F.3d at 123. Parents may challenge their child's IEP as inadequate by filing a Due Process Complaint ("DPC"), which triggers an administrative-review process by an IHO. See M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013) (citing 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. L. § 4404(1)). An aggrieved party may appeal the IHO's decision to the SRO, and the SRO's decision may then be challenged in state or federal court. Id. at 135–36.

If a school district fails to provide a FAPE to a child with disabilities, the child's parents may refuse the improper placement, enroll the child in an appropriate private school, and retroactively seek reimbursement from the state for the cost of the private school by bringing a DPC. See Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359,

3

369-70 (1985). Parents who choose this path "do so at their own financial risk." Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993). A school district must pay for the parents' unilateral private placement if: "(1) the school district's proposed placement violated the IDEA . . .; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." Ventura de Paulino v. N.Y.C. Dep't of Educ., 959 F.3d 519, 526-27 (2d Cir. 2020). Reviewing courts need not reach prongs two and three of this test if, under prong one, they determine that the school district's IEP is adequate. See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir. 2000).

In this case, both parties move for summary judgment. "Though the parties in an IDEA action may call the procedure 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative determination, not a summary judgment motion." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012). Under the IDEA, a district court must conduct an independent review of the administrative record, along with any additional evidence presented by the parties, and must determine by a preponderance of the evidence whether the IDEA's provisions have been satisfied. See Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380-81 (2d Cir. 2003). Although this review is independent, courts should "defer to the

administrative decision because the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 184 (2d Cir. 2012).

"Deference is particularly appropriate when . . . the state hearing officers' review has been thorough and careful." Walczak, 142 F.3d at 129; C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 77 (2d Cir. 2014) (finding that the degree of deference depends on "the quality of the opinion and the court's institutional competence").[2] Finally,

> Where the IHO and SRO disagree, reviewing courts are not entitled to adopt the

---

[2] The Second Circuit Court of Appeals has provided several examples of how the quality of the state administrative decision and the district court's institutional competence might affect the deference owed to the administrative decision:

> [D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures. Decisions involving a dispute over an appropriate educational methodology should be afforded more deference than determinations concerning whether there have been objective indications of progress. Determinations grounded in thorough and logical reasoning should be provided more deference than decisions that are not. And the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO than when the district court has before it additional evidence that was not considered by the state agency.

M.H., 685 F.3d at 244.

>        conclusions of either state reviewer according
>        to their own policy preferences or views of
>        the evidence; courts must defer to the
>        reasoned conclusions of the SRO as the final
>        state administrative determination.

M.H., 685 F.3d at 246.

**II.**

The following facts are taken from the Certified Administrative Record. See ECF No. 22 ("CAR").

The plaintiff is the parent and natural guardian of D.O., a student whose diagnoses include seizure disorder, cerebral palsy, and cortical visual impairment. See CAR at 222. D.O. is non-verbal, non-ambulatory, and has an educational classification of "Multiple Disabilities." Id. D.O. began attending the International Institute for the Brain ("iBrain") during the 2020-2021 school year. Id. at 382. At iBrain, D.O. was placed in a 6:1+1 class and received various related services conducted in 60-minute sessions, including music therapy led by a trained provider. See id. at 281–83, 286.[3]

On March 30, 2022, the DOE convened a CSE to develop an IEP for D.O. Id. at 12, 562-63. D.O.'s parents and iBrain staff had

---

[3] The "shorthand '6:1:1' refers to a classroom with a maximum of six students, at least one licensed special education teacher, and at least one additional teacher or paraprofessional." Navarro Carrillo v. N.Y.C. Dep't of Educ., No. 21-2639, 2023 WL 3162127, at *1 n.1 (2d Cir. May 1, 2023)(summary order). By contrast, a 12:1+(3:1) class—sometimes referred to as a 12:1:4 class, "refer[s] to a classroom with a maximum of twelve students, at least one licensed special education teacher, and

the opportunity to share their views at the CSE meeting. See id. at 13. The resulting IEP determined that D.O. required "highly intensive interventions, specifically designed instruction, modifications and adaptations such as a 1:1 [paraprofessional], 1:1 academic instruction, [assistive technology] devices, extended processing time, verbal prompts, adapted materials, breaks, redirection, environmental modifications." Id. at 448. The IEP also concluded that D.O. required a "[h]ighly structured classroom or corner room with less stimulus from visual and auditory distractions." Id. at 444.

The IEP recommended a 12-month school year consisting of instruction in a 12:1+(3:1) classroom. Id. at 469–70. The IEP also included and a full-time paraprofessional for transportation and for health, ambulation, feeding, and safety. Id. at 469, 480. The CSE concluded that D.O. should continue to receive five 60-minute sessions per week of individual occupational therapy ("OT"), individual physical therapy ("PT"), and individual speech language therapy. Id. at 469. The CSE also recommended three 60-minute sessions per week of individual vision education services, and one monthly 60-minute session of group parent counseling and training. Id. This totaled

---

at least four additional teachers or paraprofessionals, that is, at least one additional teacher or paraprofessional for every three students." Id.

7

approximately 19 hours of related services per week. Id. at 33, 640. The IEP did not include music therapy. See id. at 477-78.

On May 19, 2022, the DOE sent a "Prior Written Notice" and "School Location Letter," informing the plaintiff of the DOE's placement recommendation. Id. at 370-75. The plaintiff asserts that she contacted the assigned school to schedule a tour but did not receive a response. Id. at 393. On June 17, 2022, the plaintiff notified the DOE of her disagreement with the IEP and her intention to place the student at iBrain unilaterally for the 2022-2023 school year. Id. at 368-69. The DOE sent another Prior Written Notice and School Location Letter on June 24, 2022. Id. 480-84. On July 6, 2022, the plaintiff filed a DPC, alleging that the DOE denied D.O. a FAPE for the 2022-2023 school year, that iBrain was an appropriate unilateral placement for D.O., and that the equities favored direct payment for D.O.'s iBrain placement. Id. at 390-97.

The IHO held several hearings in connection with the DPC. See id. at 38. On March 28, 2023, the IHO issued a Findings of Fact and Decision ("FOFD"), determining that the DOE failed to offer D.O. a FAPE for the 2022-2023 school year, that iBrain was an appropriate unilateral placement, and that the plaintiff was entitled to direct payment of tuition and related services. Id. at 36-47. Specifically, the IHO concluded that the DOE provided insufficient grounds to depart from iBrain's 6:1+1 class size.

8

Id. at 41-42. The IHO also concluded that it would be "mathematically impossible" to provide D.O. with all the related services he was entitled to within the assigned school's regular school week. Id. at 42-43. The IHO then found that the DOE did not provide sufficient justification for its decision to omit music therapy from D.O.'s IEP. Id. at 43. Finally, the IHO concluded that iBrain was an appropriate unilateral placement and that equitable considerations favored direct payment of D.O.'s tuition and related services. Id. at 44-47.

The DOE appealed the IHO's determination that the DOE failed to offer D.O. a FAPE for the 2022-2023 school year. Id. at 63. The plaintiff cross appealed, arguing that the IHO failed to find that the DOE predetermined the IEP's class size recommendation, and that the failure to offer D.O.'s parents a tour of the assigned school denied them the ability to meaningfully participate in the CSE process. Id. at 16.

On June 30, 2023, the SRO issued a decision reversing the IHO and finding that the DOE provided D.O. with a FAPE. Id. at 34-35. The SRO concluded that the DOE did not predetermine its 12:1+(3:1) class size recommendation. Id. at 18-19. The SRO further determined that the 12:1+(3:1) class size was appropriate and did not amount to the denial of a FAPE, and that the DOE was not required to provide D.O. with music therapy. Id. at 21-28. The SRO also concluded, based on testimony from the

9

assigned school's interim principal, that the school had the capacity to implement the IEP. Id. at 31–34. Accordingly, the SRO sustained the DOE's appeal and dismissed the plaintiff's cross appeal. Id. at 34.

The plaintiff filed an action in this Court, seeking a reversal of the SRO's decision and direct funding for D.O.'s placement at iBrain during the 2022-2023 school year. See Compl. ¶¶ 93–94, ECF No. 1. The parties have now cross moved for summary judgment. See ECF Nos. 23, 27.

### III.

#### A.

The parties first dispute the degree of deference that the Court should afford to the SRO's opinion. The DOE contends that the opinion of the SRO is entitled to significant deference because it is well reasoned and addresses issues of educational policy that fall within the institutional expertise of the state administrative body. By contrast, the plaintiff contends that the SRO decision is not thorough or well-reasoned, chiefly because it accepted the DOE's argument that a 12:1+(3:1) class was appropriate for D.O. when D.O.'s parents, iBrain, and the IHO recommended a 6:1+1 ratio.[4]

---

[4] In their initial brief, the plaintiffs contend that after the Supreme Court's decision in Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024), courts need not show any deference to a state administrative agency's decision. This argument is

10

"Courts generally defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer." M.H., 685 F.3d at 241. Moreover, federal courts "are expected to give due weight to the [administrative proceedings], mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Walczak, 142 F.3d at 129.

In this case, the SRO's opinion was well-reasoned, thorough, and supported by the record. The SRO addressed each question raised by the parties, meticulously documenting D.O.'s needs and explaining how the IEP adequately met those needs. Contrary to the plaintiff's contention, the SRO's analysis of the appropriate class size for D.O. was well reasoned. The SRO echoed the Second Circuit Court of Appeals' recent observation that "[i]n the continuum of classroom options, the 12:1:4 is the most supportive classroom available." Navarro Carrillo v. N.Y.C.

---

unpersuasive. Loper Bright overturned the Chevron Doctrine, holding that the Doctrine could not be reconciled with the Administrative Procedure Act and that therefore, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." Id. at 398, 412–13. However, "[p]utting aside the question of whether Loper Bright applies to a state agency's informal adjudication, the Second Circuit has not directed district courts to defer to the IHO or SRO on questions of law such as interpretation of the IDEA, but rather on broader fact-based questions of educational policy." Khanimova v. Aviles-Ramos, No. 24-cv-4304, 2025 WL 1266891, at *4 n.3 (S.D.N.Y. Apr. 30, 2025).

11

Dep't of Educ., No. 21-2639, 2023 WL 3162127, at *3 (2d Cir. May 1, 2023) (summary order). The SRO further noted that a "12:1+(3:1) special class provide[s] a similar staffing ratio of adult-to-student support" as a 6:1+1 class. CAR at 23. The SRO also considered testimony from the school psychologist that D.O. would receive sufficient individualized instruction in a 12:1+(3:1) class, as well as individual attention from a personal paraprofessional. See id. at 23. Finally, the SRO concluded that the IEP adequately addressed D.O.'s distractibility through the inclusion of annual goals regarding D.O.'s attention span. Id. at 24-25.

Ultimately, the SRO correctly observed that "the district was not required to replicate the identical setting used in the private school in order to offer a FAPE to the student." Id. at 23; M.C. v. Mamaroneck Union Free Sch. Dist., No. 17-cv-1554, 2018 WL 4997516, at *28 (S.D.N.Y. Sept. 28, 2018) (finding that although "the district's proposed program would not have replicated the class size, structure and supports available at [the private school]," "that is not the standard the statute imposed on the CSE"). Because the SRO's opinion carefully and thoroughly considered all the issues before it and because the judiciary generally "lacks the specialized knowledge and experience necessary to resolve persistent and difficult

12

questions of educational policy," the SRO's decision is entitled to deference from this Court. See Gagliardo, 489 F.3d at 113.

**B.**

The plaintiff next contends that the DOE failed to comply with the IDEA because: (1) the IEP failed to recommend an appropriate school placement for D.O.; (2) the IEP failed to include music therapy; and (3) the DOE predetermined the outcome of the IEP.

**1.**

The plaintiff first contends that the DOE failed to offer D.O. a FAPE because the assigned school was incapable of implementing D.O.'s IEP as written. However, the SRO reasonably concluded that the assigned school could implement the IEP. Specifically, the SRO credited testimony from the assigned school's interim principal that there was a seat available for D.O. in a 12:1+(3:1) classroom and that the school offered all D.O.'s related services, including OT, PT, speech language therapy, hearing services, vision services, and counseling. See CAR at 32.

The plaintiff responds that because D.O. requires nineteen hours of related services each week, it is mathematically impossible for the assigned school to implement the IEP. See id. at 470. However, the interim principal testified that the school had a six-hour-and-twenty-minute school day, with 50 minutes

13

collectively allocated to lunch and recess. Id. at 634-35. Accordingly, the approximately 30-hour school week accommodates D.O.'s nineteen hours of related services. The plaintiff objects that the assigned school divides the day into eight 45-minute periods which are incompatible with D.O's 60-minute related service sessions. However, the interim principal testified that the school could accommodate this issue by allowing D.O. to miss fifteen minutes of the following period when the related service was delivered outside the classroom and that the school could also deliver related services in the classroom so that the student would be "supported in the room for the related services" without missing regular instruction. See id. at 637. The SRO credited this testimony and concluded that it would be mathematically possible to comply with the IEP. See id. at 34.

Although the plaintiff contends that this approach will prove unworkable, the Second Circuit Court of Appeals has held that "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 195 (2d Cir. 2012). In this case, where the SRO reasonably concluded that the assigned school is not "factually incapable" of implementing the IEP, speculation regarding whether the assigned school will adhere to the IEP provides inadequate grounds for unilateral placement. See M.E. v. N.Y.C. Dep't of Educ., No. 15-

cv-5306, 2018 WL 582601, at *12 (S.D.N.Y. Jan. 26, 2018). Accordingly, the Court declines to reverse the SRO's finding that D.O.'s assigned school could implement the IEP.

## 2.

The plaintiff next contends that the DOE denied D.O. a FAPE when it omitted music therapy from D.O.'s IEP. The IHO found that "the District failed to dispute why music therapy is necessary in this case." CAR at 43. However, as the SRO noted, D.O. will have access to music instruction at the assigned school, although that instruction will not be conducted by a trained music therapist. See id. at 26, 715. Moreover, D.O.'s iBrain music therapist also testified that the skills targeted by music therapy are also targeted by PT and "through the speech and language pathologist." Id. at 27, 839.

As the Second Circuit Court Appeals has observed, an IEP "need not furnish every special service necessary to maximize each handicapped child's potential." M.O. v. N.Y.C. Dep't of Educ., 793 F.3d 236, 239 (2d Cir. 2015) (per curiam); Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 215 (2d Cir. 2012) (finding that IDEA "guarantees . . . an appropriate education, not one that provides everything that might be thought desirable by loving parents"). Thus, courts in this District have found that students were provided FAPEs even when their IEPs failed to provide requested music therapy services. See, e.g., Neske v.

15

Banks, No. 22-cv-6946, 2024 WL 1313160, at *4 (S.D.N.Y. Mar. 26, 2024); N.K. v. N.Y.C. Dep't of Educ., 961 F. Supp. 2d 577, 592-93 (S.D.N.Y. 2013).

Accordingly, the record supports the SRO's finding that the IEP "was substantively appropriate because it was reasonably calculated to enable the student to receive educational benefits—irrespective of whether the parent's preferred program was also appropriate." See CAR at 28.

### 3.

Finally, the plaintiff contends that D.O. was denied a FAPE because the DOE improperly predetermined the IEP when it recommended a 12:1+(3:1) class ratio. "Predetermination of a child's IEP amounts to a procedural violation of the [IDEA] if it deprives the student's parents of meaningful participation in the IEP Process." B.K. v. N.Y.C. Dep't of Educ., 12 F. Supp. 3d 343, 358 (E.D.N.Y. 2014). However "[p]redetermination is not synonymous with preparation." GB v. N.Y.C. Dept' of Educ., 145 F. Supp. 3d 230, 248 (S.D.N.Y. 2015). "[A] district's consideration of potential educational programs in anticipation of a CSE meeting does not itself amount to predetermination provided the district maintains the requisite open mind during the meetings." B.K., 12 F. Supp. 3d at 358.

In considering whether the DOE predetermined its class size recommendation, the SRO observed that the school psychologist

16

testified that the IEP was determined at the CSE meeting. See CAR at 19, 711. The school psychologist also testified that the DOE considered other ratios including, 6:1+1, 8:1+1, and 12:1+1, before deciding that 12:1+(3:1) would best meet D.O.'s needs. See CAR at 19, 371, 712-13. Further, "[c]ourts . . . regularly reject claims of predetermination where the record reflects active and meaningful participation by the student's parents in the formulation of the IEP." B.K., 12 F. Supp. 3d at 358. Such was the case here, where the IEP drew heavily from the recommendations of iBrain and D.O.'s parents.

Accordingly, the Court declines to reverse the SRO's conclusion that the hearing record does not support the plaintiff's predetermination claim.

## CONCLUSION

The Court has considered all of the arguments raised. To the extent not specifically addressed above, the arguments are either moot or without merit. The plaintiff's motion for summary judgment is **denied**. The defendants' motion for summary judgment is **granted**. The Clerk is directed to close ECF Nos. 23 and 27,

to enter judgment in favor of the defendants, and to close this case.

SO ORDERED.
Dated:   New York, New York
         July 21, 2025

_____
John G. Koeltl
United States District Judge